IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BONNIE REEDER and
MICHELLE FEDERICO,

    *Plaintiffs,*

vs.                                                                                                No. 24-CV-00227

UNITED STATES OF AMERICA,

    *Defendant.*

### COMPLAINT FOR COURT ORDER UNDER THE PRIVACY ACT

    Plaintiffs Bonnie Reeder and Michelle Federico file this complaint seeking an order under The Privacy Act of 1974, 5 U.S.C. § 552a(b)(11), authorizing the United States to disclose materials in its possession from the takeover of Ayudando Guardians.

### THE PARTIES

    1.    Bonnie Reeder is a resident of Lea County, New Mexico, and was a trust beneficiary of a trust, related to her mother Jane Williams, that was managed by Ayudando Guardians, Inc. Ms. Reeder is a plaintiff in the action of *Reeder et al. v. Corbin Hildebrandt and Corbin Hildebrandt, P.C.*, No. D-202-CV-2022-07504, which is a class action brought against Corbin Hildebrandt and his law firm alleging that Mr. Hildebrandt engaged in professional negligence during his representation of Ayudando Guardians, Inc.

    2.    Michelle Federico is a resident of Lea County, New Mexico, and was a trust beneficiary of a trust, related to her mother Jane Williams, that was managed by Ayudando Guardians, Inc. Ms. Federico is a plaintiff in the action of *Reeder et al. v. Corbin Hildebrandt and Corbin Hildebrandt, P.C.*, No. D-202-CV-2022-07504, which is a class action brought against

Corbin Hildebrandt and his law firm alleging that Mr. Hildebrandt engaged in professional negligence during his representation of Ayudando Guardians, Inc.

3. The United States of America is in possession of the business records of Ayudando Guardians, Inc., which were acquired when the United States Marshals Service took over Ayudando's business operations under a federal court order authorizing it to operate the business so that its assets were not improperly spent or removed, and so that the interests of Ayudando clients were protected. The United States is also in possession of the business records of Ayudando Guardians, Inc. as part of its criminal prosecution of that entity, Susan Harris, Sharon Moore, William Harris, and Craig Young.

## JURISDICTION AND VENUE

4. There is subject matter jurisdiction, according to 28 U.S.C. § 1331, to decide this action because it presents a federal question related to The Privacy Act of 1974.

5. Venue is appropriate in this district because the records sought through this action are in the possession of the United States Attorney's Office for the District of New Mexico, which is in the State of New Mexico. *See* 28 U.S.C. § 1391(b)(1) and (2) (authorizing the filing of a civil action in "a judicial district in which any defendant resides," or "in which a substantial part of the events or omissions giving rise to the claim occurred").

## FACTUAL ALLEGATIONS

6. Corbin Hildebrandt, and his law firm Corbin Hildebrandt, P.C., provided legal services to Ayudando Guardians, Inc, and to other related corporate entities, which included legal advice and litigation services.

7. Ayudando was a New Mexico-based nonprofit corporation that received government benefit payments from several federal agencies and money from private sources,

which was intended for the benefit of the those that were disabled or otherwise impaired, which it was to deposit into trust accounts, act as a fiduciary of those funds, and use those funds to pay expenses for the beneficiaries of the trusts.

8. In 2017, it was discovered that Ayudando had engaged in a decades-long conspiracy to steal those funds from the beneficiaries of those trusts.

9. The result was that materially all the funds that Ayudando held or managed for the benefit of others were gone.

10. The leaders of Ayudando—Susan Harris, Sharon Moore, Bill Harris, and Craig Young—were eventually prosecuted for this theft.

11. As part of the sentencing proceedings for Susan Harris, the United States disclosed that Timothy P. Taylor, an accountant for Ayudando, sent a letter to Corbin Hildebrandt, on May 10, 2012, which informed him that:

   a. Ayudando did not hold required corporate meetings;

   b. Ayudando did not hold votes for the individuals that served as members of the Board of Directors of Ayudando;

   c. Ayudando paid exorbitant and unjustified salaries to Susan Harris, Sharon Moore, Craig Young, and Bill Harris;

   d. Susan Harris, Sharon Moore, Craig Young, and Bill Harris received car allowances from Ayudando;

   e. Ayudando kept an American Express card that Susan Harris used for her own personal benefit;

   f. Cash payments ranging from $13,000 to $100,000 were made to Susan Harris, Sharon Moore, Craig Young, and Bill Harris;

  g. Susan Harris, Sharon Moore, Craig Young, and Bill Harris used Ayudando "like a personal ATM;"

  h. Susan Harris and Sharon Moore had two other bank accounts with Ayudando that only they controlled even though Ayudando funds ran through those accounts; and

  i. Susan Harris misrepresented the financial health of Ayudando.

*See* Ex. 1.

  12. Rather than using this information to protect Ayudando and its beneficiaries, Mr. Hildebrandt threatened Mr. Taylor with litigation and the negotiated a settlement agreement which authorized a $11,403.17 payment to Mr. Taylor in return for Mr. Taylor keeping the information disclosed in his letter confidential. *See* Ex. 2.

  13. This settlement agreement was signed just one day after Mr. Taylor disclosed the malfeasance and criminal activity occurring at Ayudando to Mr. Hildebrandt, who was the entity's attorney.

  14. Mr. Hildebrandt did not carry out any investigation to determine the scope of the fraud, malfeasance, and criminal activity carried out by Susan Harris, Sharon Moore, Craig Young, and Bill Harris.

  15. Susan Harris, Sharon Moore, Craig Young, and Bill Harris then continued their illegal scheme.

  16. The scheme resulted in the spending of more than $4.4 million of money that should have been held to benefit others being spent for personal expenses using the American Express card that was identified in Mr. Taylor's letter.

  17. Susan Harris, Sharon Moore, Craig Young, and Bill Harris took vacations to Hawaii and cruises paid for with money that should have been kept in trust to benefit others.

18. This included $17,000 for a Celebrity Cruise to the Caribbean in 2013, $20,000 for the same cruise in 2014, nearly $40,000 for a Regent Seven Seas cruise, and $19,821 to Norwegian Cruise Lines in 2017.

19. Sharon Moore also paid for two vacations to San Diego in 2015 and 2016, which amounted to more than $12,000.

20. Susan Harris, Sharon Moore, Craig Young, and Bill Harris purchased homes in a gated community, new cars, and recreational vehicles with funds that should have been kept in trust for others.

21. For example, Susan Harris and Sharon Moore paid $50,950 of Ayudando funds to Mercedes Benz of Albuquerque in 2011.

22. Susan Harris and Bill Harris lived in a home valued at $540,700 that was paid for with funds they stole from Ayudando clients and beneficiaries. Susan Harris and Bill Harris used another $206,970 in Ayudando money to pay for Craig Young's mortgage.

23. Susan Harris, Sharon Moore, Craig Young, and Bill Harris maintained a luxury suite at The Pit to attend University of New Mexico basketball games, often running up nightly bills of more than $3,000. The total costs of the luxury suite exceeded $300,000. These costs were also paid for with money that should have been kept in trust for Ayudando clients and beneficiaries.

24. Susan Harris and Sharon Moore also wrote checks from Ayudando accounts for their own use. For example, a check for $61,426 was made out to Susan Harris in 2012 and several multi-thousand-dollar checks were made out to cash.

25. Mr. Hildebrandt then took actions to cover up his knowledge and professional negligence.

26. For example, on May 25, 2017, Mr. Hildebrandt sent a letter to several companies that insured Desert State Life Management—a company like Ayudando that had also stolen client funds—requesting that they preserve evidence and produce information related to potential claims against those insurance companies, alleging that Desert State Life Management had stolen funds from Ayudando clients.

27. On June 6, 2017, Mr. Hildebrandt filed a lawsuit on behalf of Ayudando Guardians, Inc. against Desert State Life Management, Paul A. Donisthorpe, and L. Helen Bennett seeking to recover money stolen from trusts that Ayudando had invested with Desert State Life Management.

28. On July 11, 2017, Ayudando Guardians, Susan Harris, and Sharon Moore were indicted in the District of New Mexico for conspiracy, fraud, theft, and money laundering based on their scheme to steal client funds from Ayudando. Craig Young and Bill Harris were later indicted as well.

29. On August 31, 2017, the United States Marshals Service took over management responsibilities of Ayudando Guardians, Inc.

30. Susan Harris, Sharon Moore, Craig Young, and Bill Harris were all convicted of crimes related to this scheme.

31. On December 14, 2022, Plaintiffs Bonnie Reeder and Michelle Federico filed a lawsuit against Corbin Hildebrandt and Corbin Hildebrandt, P.C., on behalf of themselves and all others similarly situated, alleging that Mr. Hildebrandt engaged in professional negligence, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation during his representation of Ayudando Guardians, Inc. *See* Ex. 3.

32. On February 17, 2023, Plaintiffs Bonnie Reeder and Michelle Federico filed served a subpoena on the United States Attorney's Office for the District of New Mexico, requesting:

a. A document with the names and contact information of, and if available, the names and contact information of the present-day guardians of, all known clients/wards of Ayudando Guardians Inc., or, if no such single document exists, then a collection of documents from which the same information can be obtained.

b. All discovery produced by the Government under Fed. R. Crim. P. 16(a) to any Defendant in the federal criminal case number 17-CR-1836-MV/JFR.

c. All documents associated with the aforementioned case 17-CR-1836 (to the extent that this qualifier is unclear, we are willing to accept the objective test of whether the document in question was kept in files dedicated to that case by the Assistant United States Attorneys assigned to represent the Government in the case) that were written by Corbin Hildebrandt, including email correspondence with your office.

d. Spreadsheets detailing the financial losses suffered by each client/ward of Ayudando Guardians Inc., and any materials prepared or curated by forensic accountants to support, substantiate, or explain the spreadsheet figures.

e. All documents evidencing payments from Ayudando Guardians Inc., Susan Harris, Sharon Moore, William Harris, or Craig Young to either Corbin Hildebrandt, Corbin Hildebrandt, P.C., or another entity known to you to be owned in while or in part by Corbin Hildebrandt.

f. All emails, letters, and memoranda associated with the aforementioned case 17-CR-1836 and written before July 11, 2017 (the date of initiation of criminal proceedings against Ayudando Guardians Inc.) that indicate that they were sent, copied, or blind-copied to Corbin Hildebrandt.

    g.  All financial records of Ayudando Guardians reflecting transactions made prior to July 11, 2017.

    h.  All documents prepared by any forensic accountant working for or with the Federal Bureau of Investigation and transmitted to Assistant United States Attorneys Jeremy Pena, Brandon Fyffe, or Stephen Kotz in association with the aforementioned case 17-CR-1836.

Ex. 4.

33.    The subpoena was accompanied by a *Tuohy* letter and proposed confidentiality order. *Id.*

34.    A copy of the subpoena, and a return of service on the United States Attorney's Office for the District of New Mexico, was filed in the state court class action to allow Corbin Hildebrandt or Corbin Hildebrandt, P.C. to object to the subpoena. *See* Ex. 5.

35.    Neither Corbin Hildebrandt nor Corbin Hildebrandt, P.C. filed any objections or moved to quash the subpoena prior to the expiration of the 14-day deadline to do so under the New Mexico Rule of Civil Procedure for the District Courts. Rule 1-045(C)(2)(b)(ii), NMRA ("any party who objects to the subpoena shall, within fourteen (14) days after service of the subpoena, serve on the person served with the subpoena and all parties written objection to or a motion to quash inspection, copying, testing, or sampling of any or all of the designated materials or inspection of the premises").

36.    On February 22, 2023, the United States Attorney's Office for the District of New Mexico requested that the deadline to respond to the subpoena be extended to March 22, 2023. *See* Ex. 6.

37.    Plaintiffs agreed.

38. On March 5, 2023, the United States Attorney's Office for the District of New Mexico requested that the deadline to respond to the subpoena be extended to April 5, 2023.

39. Plaintiffs agreed.

40. On April 5, 2023, Plaintiffs' counsel had a lengthy phone conference with Samantha E. Kelly from the United States Attorneys' Office for the District of New Mexico. That conversation discussed concerns that the United States Attorneys' Office had that complying with portions of the subpoena may be prohibited by The Privacy Act of 1974. *Id.*

41. On April 19, 2023, Plaintiffs' counsel had a second phone call with Samantha Kelly. On that call, the United States noted that certain materials responsive to the subpoena could not be turned over, because of The Privacy Act of 1974, absent a court order. *Id.*

42. Plaintiffs served this subpoena and sought this information from the United States Attorney's Office for the District of New Mexico because, since the criminal prosecution of Ayudando Guardians and the government takeover of the entity, there is no other source of the requested information.

43. Plaintiffs have a real and significant need for this information.

44. Such information is usually sought from a defendant in a class action. This case, however, presents a class claim against a third party that does not possess the information requested in the subpoena.

45. Normal discovery procedures cannot be used as related to this subpoena because Ayudando Guardians, Inc. was taken over by the federal government. In fact, Plaintiffs attempted to obtain the information through normal discovery procedures but were unable to do so because of The Privacy Act. Therefore, any disclosure by the United States Attorney's Office, which is undoubtedly a government agency under The Privacy Act, requires an order from this Court.

46. Moreover, each set of information is necessary for the prosecution of their lawsuit.

47. For example, names and contact information of other clients/wards of Ayudando Guardians, Inc. is necessary to identify potential class numbers, litigate numerosity as related to the class action allegations, and identify the amounts of money stolen from each class member. The same is true for documents prepared by any forensic accountant as part of criminal prosecutions.

48. The discovery produced by the government under Fed. R. Crim. P. 16(a) is necessary because it includes evidence of the scheme carried out by Ayudando Guardians, Inc., Susan Harris, Sharon Moore, Bill Harris, and Craig Young. Proof of that scheme is necessary to prove up Plaintiffs' claim of professional negligence because that claim, in part, involves Mr. Hildebrandt's covering up on the scheme.

49. Documents written by Corbin Hildebrandt, including email communications that he may have had with the United States Attorney's Office, are necessary to the claim because Plaintiffs alleged in the class action complaint that Mr. Hildebrandt engaged in a course of action to cover up his professional negligence once it became clear that the scheme carried out by Ayudando Guardians, Susan Harris, Sharon Moore, Bill Harris, and Craig Young would be discovered. The same is true for emails, letters, and memoranda that were sent, copied, or blind-copied to Corbin Hildebrandt prior to the public disclosure of Ayudando's criminal conduct.

50. Documents related to the financial losses of each client/ward are necessary for the prosecution of Plaintiffs' class action complaint because those documents are the only records that could be used to establish the damages suffered by the class. Such records will also be necessary evidence at the class certification stage as part of the commonality prong of Rule 23. The same is also true of financial records of Ayundado Guardians reflecting transactions made prior to July 11,

2017. And the same is true for the request for documents prepared by any forensic accountant working for the FBI or with the United States Attorney's Office as part of the criminal prosecutions.

51. Documents related to payments made from Ayudando Guardians, Inc., Susan Harris, Sharon Moore, William Harris, and Craig Young to Corbin Hildebradnt or Corbin Hildebrandt, P.C. are also necessary to determine damages as alleged in the class action complaint.

52. There is no likelihood of harm to any of the clients or beneficiaries of Ayudando Guardians, Inc. because Plaintiffs have already agreed to enter into a confidentiality order protecting the requested information from public disclosure.

53. There is also no likelihood of harm to any of the clients or beneficiaries of Ayudando Guardians, Inc. because Plaintiffs only intention in obtaining the information is to prosecute a civil action to recover damages for the money that was stolen from them by Ayudando Guardians, which was rubber stamped and covered up by Corbin Hildebrandt.

## COUNT 1

54. Plaintiffs incorporate all preceding allegations as if fully restated herein.

55. The United States Attorney's Office for the District of New Mexico is a government agency subject to The Privacy Act of 1974. *See* 5 U.S.C. 552(f) (defining agency as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government").

56. The records sought through this action, that were requested by the subpoena, are maintained in a "system of records." *See* 5 U.S.C. 552a(a)(5) (explaining that a system of records is a collection of documents organized in such a way that they are retrievable by name, or some other identifier assigned to the individual).

57. The subpoena served on the United States does not, by itself, constitute an order of a court of competent jurisdiction because the New Mexico Rules of Civil Procedure for the District Courts do not require a state district court to approve of or issue subpoenas for documents; they are instead prepared and served by counsel. *See Stiles v. Atlanta Gas Light Co.*, 453 F. Supp. 798, 800 (N.D. Ga. 1978) ("Mere issuance in discovery proceedings of a subpoena which is always subject to the power of the court to quash or limit does not meet the[s] standard [of Section 552a(b)(11)].").

58. The withheld documents are necessary to the prosecution of Plaintiffs' class action complaint against Corbin Hildebrandt and Corbin Hildebrandt, P.C., Case No. D-202-CV-2022-07504.

59. The withheld documents cannot be otherwise obtained from a party to that litigation or through normal discovery practices.

60. There is no risk of harm to any of the individuals identified in those withheld documents.

61. An order from a court of competent jurisdiction is therefore necessary for the United States to produce the withheld documents. *See* 5 U.SC. § 552a(b)(11).

**PRAYER FOR RELIEF**

Plaintiffs request that this Court issue an order, according to 5 U.S.C. § 552a(b)(11), for the United States to disclose to Plaintiffs the records that have been withheld from the subpoena served on it in Case No. D-202-CV-2022-07504 in the Second Judicial District Court in New Mexico.

| | |
|---|---|
| Submitted: March 6, 2024 | Respectfully submitted,<br><br>*/s/ Nicholas T. Hart*<br><br>Carter B. Harrison IV<br>Nicholas T. Hart<br>**HARRISON & HART, LLC**<br>924 Park Ave SW, Suite E<br>Albuquerque, NM 87102<br>(505) 295-3261<br>carter@harrisonhartlaw.com<br>nick@harrisonhartlaw.com<br><br>*Attorneys for Plaintiffs* |