# HARRISON, HART & DAVIS, LLC

ATTORNEYS AND COUNSELORS AT LAW
924 PARK AVENUE SOUTHWEST, SUITE E
ALBUQUERQUE, NEW MEXICO 87102

TELEPHONE
(505) 295-3261

FACSIMILE
(505) 341-9340

CARTER B. HARRISON IV
NICHOLAS T. HART
FRANK T. DAVIS
DANIEL J. GALLEGOS
MARGIE A. RUTLEDGE

February 17, 2023

**VIA HAND DELIVER & EMAIL:  ruth.f.keegan@usdoj.gov**

Ruth Keegan
Civil Division Chief
United States Attorney's Office (D.N.M.)
201 Third Street Northwest
Albuquerque, New Mexico 87102

      **Re:**    *Reeder v. Hildebrandt*, **No. D-202-CV-2022-07504 (N.M. 2d Jud. Dist. Ct.)**
              *Touhy* **Request for Materials Relating to Ayudando Guardians Inc.**

Dear Ruth:

      I am writing in connection with the enclosed subpoena *duces tecum* directed to your office. *See* Subpoena for Production of Documents (enclosed). My law firm has filed lawsuit in New Mexico state court seeking to certify a class comprised of victims of Ayudando Guardians Inc., a guardianship firm for special-needs individuals prosecuted (along with its principals) by your office in a case numbered 17-CR-1836-MV/JFR, against Corbin Hildebrandt, Ayudando's attorney. The claims arise out of Mr. Hildebrandt's ignoring and suppressing of knowledge of Ayudando's criminal conduct, which was brought to his attention most pointedly in 2012 in an alarm-sounding letter from accountant Timothy Taylor — to which Mr. Hildebrandt responded by withholding payment and locking Mr. Taylor into a non-disclosure agreement.

      We are of course aware of our obligation to abide by the Department of Justice's *Touhy* regulations. *See* 28 C.F.R. § 16.21-29; *Justice Manual* § 1-6.100-640. To that end, we have been in contact with Stephen Kotz and Jeremy Pena, the AUSAs handling the criminal and forfeiture actions against Ayudando, via email, and they were kind enough to have a meeting with my law partners and I at your office earlier this month. *See* Email Communications Between Plaintiffs' Counsel & AUSAs Kotz & Pena (dated Jan. 19 to Feb. 1, 2023) (enclosed). We laid out our case and some of the information we knew we hoped to obtain from your office, and Messrs. Kotz and Pena answered our questions about what existed and disposed of some issues on the front end, and very helpfully described the materials they thought might be helpful to us. My hope is that those communications obviate the need for me to go into detail about why we desire/need the information requested in our subpoena — I expect that the basic relevance of most of the requests is self-evident in any event.

PLAINTIFF'S
EXHIBIT
**4**

Ms. Ruth Keegan  
February 17, 2023  
Page 2 of 8

Subject to FRE 408  
Confidential & Inadmissible

      To nonetheless clarify how we believe our subpoena fits into the DOJ's *Touhy* framework: the United States is not a party to this lawsuit and will not become one (at least not for any reason we can predict at this time); we are not seeking oral testimony at this time, and while it is possible that we may later, we will work hard to only seek federal-employee testimony that is truly irreplaceable by other forms of evidence; and we believe that your office is the originating component for all information sought (if you come to believe that the Federal Bureau of Investigation or the U.S. Marshals Service might have information accessible only by way of a request directed to them that we would find useful, we would appreciate you informing us, but this request is directed exclusively to your office). We believe (and hope) that "[t]here is no objection . . . [by] the originating component," 28 C.F.R. § 16.24(b)(1), and we additionally believe we easily satisfy the two other requirements for disclosure, which are that "[t]he demanded disclosure, in the judgment of the responsible official, is appropriate under the factors specified in § 16.26(a)," and that "[n]one of the factors specified in § 16.26(b) of this part exists," *id.* § 16.24(b)(2)-(3).

### I.    The § 16.26(a) Analysis

      Section 16.26(a) is in turn a two-part inquiry asking "[w]hether [the requested] disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose," and "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege."

### A.    The § 16.26(a)(1) Inquiry: Our Entitlement to the Requested Information Under the Rules of the Forum

      The rules of procedure governing our case are the New Mexico Rules of Civil Procedure, specifically Rules 1-045 (subpoenas) and 1-026 (discovery). The New Mexico Rules are modeled closely after their federal counterparts, and, as with the Federal Rules, Rule 1-045 provides that the scope of materials obtainable from third parties to the litigation by way of subpoena mirrors the scope of party discovery under Rule 1-026, *see* Rule 1-045 adv. cmte. n.10 ("[S]ubpoena[s] of items continue[] to be subject to the limitations of discovery in Rule 1-026 NMRA."), with the exception of a few additional restrictions that are not applicable here, *see* Rule 1-045(c)(3)(b) (requiring a showing of hardship by the requesting party, but not outright barring, subpoenas for "unretained expert[] opinion" and "trade secret[s] or other confidential research, development, or commercial information"). Rule 1-026, in turn, is broader than its federal analogue, permitting discovery of anything "relevant to the subject matter involved in the pending action," including information that may "not be admissible at the trial[, provided that] the information sought appears

reasonably calculated to lead to the discovery of admissible evidence."[1] Rule 1-026(B)(1) NMRA. Against this standard, the relevance of the subpoena topics is clear: in a case brought by Ayudando's clients-*cum*-victims, all requests relate to your office's criminal prosecution of Ayudando, with many specifically relating to Mr. Hildebrandt's role at Ayudando.

 Going request-by-request, Request No. 1 asks for names and contact information of the victims, which is necessary for us to create a class list, both to satisfy the "ascertainability" requirement for certification and to send out the various required notices to class members. Request No. 2 asks for the criminal-case discovery production, which is a set of documents pre-curated on the basis of a legal standard — that the documents be either "material to preparing the defense" of Ayudando and/or its principals (meaning it would be relevant to its defenses in this civil action as well, since our suit does require establishing the massive fraud), or ones that "the government intend[ed] to use . . . in its case-in-chief at trial," again meaning that the documents must be relevant to establishing the fraud — that heavily overlaps, if not completely mirrors, the Rule 1-026(B)(1) standard. Fed. R. Crim. P. 16(a)(1)(E). Request No. 3 asks for documents written by Mr. Hildebrandt, whose wrongful behavior is the basis for the suit. Request No. 4 asks for spreadsheets detailing each client's financial losses, which is necessary to prove both the aggregate damages and the ideal distribution of funds among the class. Request No. 5 asks for payments to Mr. Hildebrandt, which will play a part in bolstering the fact that Mr. Hildebrandt (a) was (or legally should have been) representing Ayudando, and not its principals, and (b) that he was providing paid, and not *pro bono*, representation. Request No. 6 asks for communications sent to Mr. Hildebrandt, which are relevant to establishing the full extent of his knowledge of Ayudando's fraudulent actions and ability to serve its wards — and the times at which various degrees of knowledge were or should have been obtained by Mr. Hildebrandt — which in turn affects what a reasonable and loyal attorney would have done at those times. Request No. 7 seeks Ayudando's financial records prior to prosecution, which are necessary to prove the fraud and the timing of its unfolding (which in turn will be matched up to the timing of the revelations to Mr. Hildebrandt from Request No. 6), which will allow us to prove which damages are attributable to Mr. Hildebrandt, and to which class members those damages should be paid. Request No. 8 requests documents prepared by the Government's forensic accountant, which we presume will be relevant to damages and causation, and which were identified by Messrs. Kotz and Pena as being likely to be especially helpful documents to our case. I hope you can see that, with each request,

---

[1] This is the former (pre-2000) federal standard for discovery relevance, and the federal changeover to the current language — which allows discovery only into matter "relevant to any party's claim or defense and proportional to the needs of the case" — is uniformly viewed as narrowing the scope of discovery. *See, e.g., United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 582-86 (D.N.M. 2015) (Browning, J.) (stating that the 2000 amendments reflected the rulemakers' desire to "put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery"). New Mexico never adopted the federal change.

Case 2:24-cv-00227-KWR-GBW   Document 3-4   Filed 03/10/24   Page 4 of 8

Ms. Ruth Keegan
February 17, 2023
Page 4 of 8

Subject to FRE 408
Confidential & Inadmissible

we made efforts to tailor the scope of the request — often temporally, and often by subject matter — to minimize the inclusion of irrelevant or high-burden-to-materiality-ratio information.

### B. The § 16.26(a)(2) Inquiry: The Non-Existence or Waiver of Privilege

Turning to § 16.26(a)(2), "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege," our belief is that the state civil standards apply, *see* Fed. R. Evid. 510 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."), including as to the work-product doctrine, which we believe is the quasi-privilege most arguably implicated by this subpoena,[2] *see, e.g., Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73 (S.D.N.Y. 2010) ("Because the [work-product] doctrine is procedural in nature, the rules of the forum court apply and it is therefore not subject to a choice of law analysis." (citation omitted)). To that end, we note that the New Mexico courts have expressly rejected the creation of a law-enforcement privilege, viewing the protection from disclosure of "on-going criminal investigations[s]" as one of mere interest-balancing under Rule 1-026. *See Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶¶ 7-21 ("Our Constitution and Court Rules Do Not Recognize a Local Law Enforcement Privilege").

First, we do not believe that the work-product (and law-enforcement, for that matter) protections are the type of "privileges" separately analyzed under § 16.26(a)(2) at all. "[T]he work-product doctrine is a qualified immunity set forth in the Federal Rules of Civil Procedure, and not a privilege like the attorney-client privilege." *Murphy v. Gorman*, 271 F.R.D. 296, 311 (D.N.M. 2010) (Browning, J.); *State of N.M. ex rel. Brandenburg v. Blackmer*, 2005-NMSC-008, ¶ 11 ("'The work product rule is not a privilege, but an immunity protecting from discovery documents and tangible things prepared by a party or its representative in anticipation of litigation.'" (citation omitted)). Functionally, the *Touhy* regulations *as a whole* — along with their non-litigation-originating cousins, the FOIA exceptions and regulations, which are all-around less-production-favoring, given that they are based only on a generalized interest in public

---

[2] In particular, we contend that federal prosecutors' communications, with *anyone*, are not subject to the attorney-client privilege. *See, e.g.*, Rita M. Glavin, *Prosecutors Who Disclose Prosecutorial Information for Literary or Media Purposes: What About the Duty of Confidentiality?*, 63 Fordham L. Rev. 1809, 1817 (1995) ("The attorney-client privilege is inapplicable to the prosecutor because no particular client reveals information to him for the purpose of obtaining legal advice."). Where the courts have found that federal attorneys do have attorney-client-privileged communications, that privilege extends only to the agency being represented, so, at most, criminal AUSAs' privilege would extend only to their communications within your office itself, not to, *e.g.*, FBI agents. *See, e.g.*, Federal Bar Ass'n Ethics Cmte., *The Government Client and Confidentiality*, Op. 73-1, 32 Fed B.J. 71, 72-3 (1973) ("[T]he client of the federally employed lawyer, using the term in the sense of where lies his immediate professional obligation and responsibility, is the agency where he is employed, including those charged with its administration insofar as they are engaged in the conduct of the public business.").

Case 2:24-cv-00227-KWR-GBW   Document 3-4   Filed 03/10/24   Page 5 of 8

Ms. Ruth Keegan  
February 17, 2023  
Page 5 of 8

Subject to FRE 408  
Confidential & Inadmissible

disclosure of government operations, not the particularized interests of litigation[3] — exist in substantial part to function as a device for the dispensing of selective but non-arbitrary work-product waivers. This is more obvious with the law-enforcement privilege — which, like work product, is a qualified protection that can be overcome with various showings — which is clearly specifically covered by § 16.26(b)(5) and (c)(1)-(5) of the *Touhy* regulations. *See Split Rail Fence Co., Inc. v. United States*, 852 F.3d 1228, 1248 n.16 (10th Cir. 2017) (embracing the view of other courts that "the law enforcement privilege may be outweighed by showing necessity sufficient to outweigh the adverse effects of revealing law enforcement techniques or sources" (citation omitted)); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342-1343 (D.C. Cir. 1984) (laying out an influential nine-factor test for overcoming the law-enforcement privilege).

Second, a good portion of the documents requested either have already been produced to entities adverse to the Government, thus waiving any work-product protection or privilege, or were not produced by the Government at all but are merely evidence collected by the Government, and thus not work product. *Cf.* Fed. R. Crim. P. 16(exempting from disclosure *only* "reports, memoranda, or other internal government documents *made by an attorney* for the government *or other government agent* in connection with investigating or prosecuting the case," and not materials created by non-government persons and transmitted to the Government (emphases added)).

Third, the subpoena is not oriented toward so-called opinion work product, which receives much greater protection than factual work product under both the state and federal rules. *See* Rule 1-026(B)(5) NMRA; Fed. R. Civ. P. 26(b)(3)(A)-(B). As such, the work-product protection, even if it applies, can be overcome by a showing of "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* (both state and federal).

Fourth and finally, your office can discretionarily waive its work-product protection and privileges to advance the interests of the United States — work-product waivers are particularly common, occurring in virtually all cases, and virtually never trigger subject-matter waivers — and we contend your office should do so here, given the unusual circumstance that the United States

---

[3] This disparity is particular evident at the statutory (versus regulatory) level, when comparing the Freedom of Information Act itself to the Housekeeping Statute upon which the *Touhy* regulations are justified. *See* 5 U.S.C. § 301 ("The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."); *see also Justice Manual* § 1-6.400 ("The regulations neither create new privileges nor supersede discovery obligations that exist under the Federal Rules of Civil Procedure. 28 C.F.R. § 16.21(d). They merely serve as a procedural vehicle . . . ."). FOIA contains an express work-product exception (Exception 5) that has no counterpart in the *Touhy* regs. *See* 5 U.S.C. § 552(b)(5).

has in interest in our lawsuit securing recovery for the Ayudando victims. *See*, *e.g.*, *EEOC v. Roswell Radio, Inc.*, 2007 WL 2305521, at *5 (D.N.M. June 12, 2007) (Browning, J.) (opining that because "strategically disclosing attorney work-product is fundamental to the litigation process," "extending a broad subject-matter waiver applicable to the attorney-client privilege to the work-product protection would not properly reflect the purpose of the work-product protection" (N.B.: Even in the attorney-client privilege context, subject-matter waiver has been reserved for the offensive use of privileged materials, mostly typically the assertion of an advice-of-counsel defense.)); *Gingrich v. Sandia Corp.*, 2007-NMCA-101, ¶¶ 26-31 (holding that no subject-matter waiver of work product applied even when there was a subject-matter waiver of the attorney-client privilege, because, when a party asserts an advice-of-counsel defense, what really matters is what the attorney *communicated* to the client, not the uncommunicated work product).

## II.     The § 16.26(b) Analysis

Moving to § 16.26(b), the six specific categories of prohibited disclosures, this subpoena does not request anything that would violate a statute,[4] regulation, or rule of procedure, *see* § 16.26(b)(1)-(2), does not involve classified information or "reveal a confidential source or informant," § 16.26(3)-(4), or "improperly reveal" trade secrets. The final remaining ground — that "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired" — is almost certainly not implicated here, given that the prosecution of Ayudando and its principals has successfully concluded. § 16.26(b)(5). Even if it were implicated, § 16.26(c) lays out a five-factor balancing test under which disclosure can still be warranted (as noted above, § 16.26(b)(5) and (c)(1)-(5) effectively embody the common-law law-enforcement privilege). Given the "seriousness of the violation" addressed in our suit and "[t]he importance of the relief sought" for its victims, we contend that "the administration of justice [would] require[] disclosure" even if § 16.26(b)(5) were triggered in the first instance.

## III.    Miscellaneous Procedural Considerations

As noted above, the seeking of an umbrella protective order is not only necessary if the responsive documents include protected health information, but may be desirable and enhance our

---

[4] A possible exception is HIPAA, if the documents responsive to the subpoena requests end up containing "protected health information." *See* 45 C.F.R. § 160.103. Even if the Government's production does contain protected health information, however, HIPAA allows production if "[t]he parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court," or even if only "[t]he party seeking the protected health information has requested a qualified protective order from such court." 45 C.F.R. § 164.512(e)(1)(iv)(A) & (B). We have prepared a protective order for your review. *See* Part III of this Letter, *infra*.

Ms. Ruth Keegan  
February 17, 2023  
Page 7 of 8

Subject to FRE 408  
Confidential & Inadmissible

showings under the *Touhy* regulations (by decreasing the burdens/cost of production to the Government) as to all documents that the Government may be willing to provide but for concerns about their proliferation outside of this litigation. Enclosed with this letter is a proposed umbrella protective order — although captioned as a HIPAA-qualified order, it should suffice to cover all documents you may wish protect, for whatever reason — for your review and revision. *See* HIPAA-Qualified Umbrella Protective Order (enclosed). We will obviously have to present any proposed protective order to opposing counsel and to the Court before it can be entered, so we cannot guarantee the exact form of order that will be entered, but we will do our part to work with you on an order that protects the interests of the United States and the Ayudando victims' privacy.

  Finally, you should be aware of an odd quirk of New Mexico subpoena law whereby, "absent a court order, [a subpoenaed person] shall not respond to the subpoena prior to the expiration of fourteen (14) days after the date of service of the subpoena," and, "if a written objection is served or a motion to quash the subpoena is filed [by a Defendant, you] shall not respond to the subpoena until ordered by the court." Rule 1-045(C)(2)(a)(ii)-(iii) NMRA. This provision has no counterpart in the Federal Rule 45 and makes no sense at all in most instances — if I ask a person informally for a set of documents, he can give them to me *ex parte*, but if I hand him a subpoena for the same documents, he is not *allowed* to accede to my request for 14 days? — but is a grossly overbroad protection intended for those situations where the subpoenaed person is the custodian of records in which the objecting party has a proprietary legal interest (*e.g.*, it allows a plaintiff to object to a subpoena issued by a defendant to his doctor, bank, or ISP for the plaintiff's own medical, financial, or internet records, and in doing so prevent the subpoenaed entity from producing in the meantime). *See Wallis v. Smith*, 2001-NMCA-017, ¶¶ 18-21 (complaining about the aforementioned practice, and precipitating a 2002 amendment to Rule 1-045 inserting the no-early-production-allowed language). We question whether this prohibition can apply to the federal government, and we especially question whether Mr. Hildebrandt has the kind of proprietary interest in anything we are requesting such that he would be entitled to interpose an objection. But we did want to make you aware of this unusual feature of New Mexico procedure.

  Thank you again for you time and hard work. We are taking this case, and this *Touhy* request specifically, very seriously, and we are happy to work with you on anything you need done.

Ms. Ruth KeeganSubject to FRE 408
February 17, 2023Confidential & Inadmissible
Page 8 of 8

Very truly yours,

HARRISON, HART & DAVIS, LLC

Carter B. Harrison IV

CBH

Enclosures (3):
Subpoena *Duces Tecum* (4 pages)
Proposed Protective Order (7 pages)
Email Communications with AUSAs Kotz & Pena (4 pages)

cc:Stephen Kotz
Jeremy Pena