# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

BONNIE REEDER and MICHELLE
FEDERICO,

      Plaintiff,

      v.                                 Case No. 24-cv-00227-KWR-GBW

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Opening Appellate Brief (**Doc. 21**), filed May 25, 2024, and fully briefed on June 19, 2024 (**Doc. 25**) and the Plaintiff's Unopposed, Expedited, Renewed Motion to Expedite Final Decision (**Doc. 27**), filed June 26, 2024, and the Plaintiffs' Unopposed Motion to Accept Brief as Timely Filed (**Doc. 26**). Having reviewed the parties' briefings, the administrative record, and the relevant law, the Court **AFFIRMS** the Department of Justice's decision to deny the Plaintiffs' *Touhy* Request. The Court also **DENIES AS MOOT** the Plaintiff's Unopposed, Expedited, Renewed Motion to Expedite Final Decision, and **GRANTS** the Plaintiffs' Unopposed Motion to Accept Brief as Timely Filed.

## BACKGROUND

Plaintiffs Bonnie Reeder and Michelle Federico bring this request for an administrative record review of the United States' *Touhy* denial, which refused to produce documents responsive to the Plaintiffs' *Touhy* subpoena. **Doc. 25.**

The Plaintiffs have filed a class action complaint in the Second Judicial District Court of New Mexico against an Albuquerque attorney, Corbin Hildebrandt. **Doc. 3-2.** Mr. Hildebrandt

provided legal services to Ayudando Alpha, Inc. d/b/a Ayudando Guardians, a New Mexico non-profit organization that provided guardianship and conservatorship services to hundreds of special needs individuals. **Docs. 1 at 2; 3-2; 21 at 5.** In 2017, the United States convicted several managers of Ayudando Guardians for perpetrating a decades-long fraud to steal millions of dollars from hundreds of victims, most of whom have special needs. **Docs. 21 at 2; 24 at 32-33**; *United States v. Ayudando Alpha, Inc.*, 17-cr-1836-MV (D.N.M.). Plaintiffs Bonnie Reeder and Michelle Federico were both beneficiaries of trusts managed by Ayudando Guardians. **Doc. 1 at 1-2.** During the criminal investigation and prosecution of the Ayudando managers, the United States Marshals Service took over the operations of Ayudando Guardians and currently possesses its business and financial records. *Id.* **at 2, 6.**

During the sentencing of one of the convicted Ayudando managers, new information about Mr. Hildebrandt's possible involvement in covering up Ayudando Guardians' fraud emerged for the first time. **Docs. 1 at 3-4; 1-2.** Based on this evidence, Plaintiffs have filed a class action lawsuit against Mr. Hildebrandt, alleging professional negligence, breach of fiduciary duty, negligent misrepresentation, and intentional representation. **Doc. 1 at 6.** The proposed class of plaintiffs comprises all Ayudando clients from May 10, 2012, to August 31, 2017, and the Plaintiffs claim that the United States is the only entity that can provide this information.[1] **Doc. 21 at 8.** On February 17, 2023, the Plaintiffs served a subpoena on the United

---

[1] "Such information is usually sought from a defendant in a class action. This case, however, presents a class claim against a third party that does not possess the information requested in the subpoena. Normal discovery procedures cannot be used to acquire the documents sought by the *Touhy* subpoena, because Ayudando Guardians, Inc. was taken over by the federal government. In fact, the Plaintiffs attempted to obtain the information through normal discovery procedures but were unable to do so because of the Privacy Act. Therefore, any disclosure by the United States Attorney's Office, which is undoubtedly a government agency under the Privacy Act, requires an order from this Court." **Doc. 11 at 10-11.**

States Attorney's Office (USAO) for the District of New Mexico[2] requesting the following

records:

I. A document with the names and contact information of, and if available, the names and contact information of the present-day guardians/wards of Ayudando Guardians Inc., or, if no such single document exists, then a collection of documents from which the same information can be obtained.

II. All discovery produced by the Government under Fed. R. Crim. P. 16(a) to any Defendant in the federal criminal case number 17-CR-1836-MV/JFR.

III. All documents associated with the aforementioned case 17-CR-1836 (to the extent that this qualifier is unclear, we are willing to accept the objective test of whether the document in question was kept in files dedicated to that case by the Assistant United States Attorneys assigned to represent the Government in the case) that were written by Corbin Hildebrandt, including email correspondence with your office.

IV. Spreadsheets detailing the financial losses suffered by each client/ward of Ayudando Guardians Inc., and any materials prepared or curated by forensic accountants to support, substantiate, or explain the spreadsheet figures.

V. All documents evidencing payments from Ayudando Guardians Inc., Susan Harris, Sharon Moore, William Harris, or Craig Young to either Corbin Hildebrandt, Corbin Hildebrandt, P.C., or another entity known to you to be owned in while or in part by Corbin Hildebrandt.

VI. All emails, letters, and memoranda associated with the aforementioned case 17- CR-1836 and written before July 11, 2017 (the date of initiation of criminal proceedings against Ayudando Guardians Inc.) that indicate that they were sent, copied, or blind-copied to Corbin Hildebrandt.

VII. All financial records of Ayudando Guardians reflecting transactions made prior to July 11, 2017.

VIII. All documents prepared by any forensic accountant working for or with the Federal Bureau of Investigation and transmitted to Assistant United States Attorneys Jeremy Pena, Brandon Fyffe, or Stephen Kotz in association with the aforementioned case 17-CR-1836.

**AR 009-0012.**

On June 7, 2023, the USAO's office denied the Plaintiffs' *Touhy* request based on (i) 28

C.F.R. § 16.26(b)(1), which prohibits the department from disclosing documents that "would

violate a statute," citing 5 U.S.C. § 552a(b) (the Privacy Act); (ii) section 16.26(b)(5), which

prohibits the disclosure would "reveal investigatory records compiled for law enforcement

---

[2] The Plaintiffs have also filed a contested motion to intervene in the underlying criminal case against the Ayudando defendants, asking the court to issue an order under 5 U.S.C. § 552(b)(11) to obtain the same discovery that they seek in the instant case. *United States v. Harrison*, 17-cr-1836-MV (Doc. 409) (April 4, 2024).

purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." **AR 0035.** In its denial, the USAO's office also noted that it did not address its other discovery-based objections to the subpoena because "sovereign immunity bars direct enforcement by the state court of the subpoena against the Department or its employees," but that the request as worded is "facially overbroad, unduly burdensome, and vague." **AR 0036.**

The Plaintiffs filed this action under the Privacy Act on March 10, 2024, and filed an amended complaint on April 25, 2024, adding a claim under the Administrative Procedures Act. **Docs. 1; 11.** The Plaintiffs then voluntarily dismissed their claim under the Privacy Act on May 7, 2024. **Doc. 15.** Plaintiffs now appeal the Department's decision as arbitrary and capricious and request this court to review and reverse the Department's *Touhy* Denial under the Administrative Procedures Act (the "APA"). **Doc. 11 at 17-20.** On May 13, 2024, the USAO's office notified all Ayudando victims through the Department's Victim Notification System that the Plaintiffs' law firm had filed a lawsuit to recover damages on behalf of clients of Ayudando Guardians. **Docs. 24 at 8; 24-A.**

## LEGAL STANDARD

### I. The Administrative Procedures Act (APA)

"Under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions in a court of the United States seeking relief other than money damages…" *Gilmore v. Weatherford*, 694 F.3d 1160, 1166, n.1 (10th Cir. 2012). *See also United States v. Testan*, 424 U.S. 392, 399 (1976) ("[T]he United States, as sovereign, is immune from suit save it consents to be sued."). The Administrative Procedures Act allows for a trial court to hold unlawful and set aside final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," "unsubstantiated by substantial evidence," or "unwarranted by the facts." 5 U.S.C. §702(A), (E), (F). An agency action is arbitrary and capricious if the agency relied on "factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the produce of agency expertise." *Arizona Public Service Co. v. Environmental Protection Agency*, 562 F.3d 1116, 1122-1123 (10th Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983)).

Even though the Court's inquiry into the basis of an agency action must be "searching and careful," trial courts are instructed not to set aside an agency action because of a less-than-ideal explanation so long as the agency's decision-making process is reasonably discerned. *Arizona Public Service Co.*, 562 F.3d at 1123; *Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997); *Alaska Dep't of Env't Cons.*, 540 U.S. 497. The review is, therefore, "narrow and deferential" to the agency, giving it a presumption of validity, and the Court must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors. *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006); *Wyoming v. USDA*, 661 F.3d 1209, 1227 (10th Cir. 2011); *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (noting that the agency's action has a presumption of validity and that the burden of proof rests with the party challenging the agency action). Judicial review of agency action is generally restricted to the administrative record unless there is clear evidence that the agency did not properly designate the administrative record. *Citizens for Alternatives to Radioactive Dumping v.*

*Dep't of Energy*, 485 F.3d 1091, 1096 (2007); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).

Review of final agency actions by a district court is conducted according to the Federal Rules of Appellate Procedure. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994). When determining whether the final agency decision is arbitrary and capricious, the court must focus on the rationality of the agency's decision-making process—rather than the rationality of the actual decision—meaning that the grounds upon which the agency acted must be disclosed and sustained by the record. *Id*. This analysis requires this Court to review the Department's decision-making process and determine whether it had examined all the relevant factual information, articulated a satisfactory explanation for its action, and rationally connected the factual record and the decision. *Id.*; *Ctr. For Biol. Diversity v. Dep't of the Interior*, 72 F.4th 1166, 1178 (10th Cir. 2023); *Kobach*, 772 F.3d at 1197 (the reviewing court must "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."). "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50.

If the reviewing court determines that the agency acted arbitrarily and capriciously, it may set aside the agency's action, findings, and conclusions. *See* 5 U.S.C. § 706(2); *Olenhouse*, 42 F.3d at 1573-74. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action … the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## II.      The Housekeeping Act and *Touhy* Regulations

Federal agencies may "prescribe regulations for the … the custody, use, and preservation of its records, papers, and property," known as *Touhy* regulations under the Housekeeping Act.[3] 5 U.S.C. § 301; *United States ex rel. Touhy*, 340 U.S. 462, 463 (1951); *Schroeder v. U.S. Dep't. Veterans Affs.*, 673 F. Supp. 3d 1204, 1208 (D. Kan. May 16, 2023). *Touhy* regulations allow subordinate non-party federal employees to refuse a subpoena when the refusal is based on applicable federal regulations. *Touhy*, 340 U.S. 462, 463 (1951). *See* Fed. R. Civ. P. 45; *Aero Tech v. Great American Ins. Co.*, 2023 WL 5002618, at *5 (D.N.M. Aug. 3, 2023). The Tenth Circuit has further interpreted *Touhy* to include documents held by federal agencies when the agency has refused to produce those documents under its *Touhy* regulations. *See Saunders v. Great West. Sugar Co.*, 396 F.2d 794, 795 (10th Cir. 1968); *U.S. Steel Corp v. Mattingly*, 663 F.2d 68 (10th Cir. 1980); *United States v. Allen*, 554 F.2d 398 (10th Cir. 1977); *Armstrong v. Arcanum Group, Inc.,* 250 F. Supp. 3d 802, 804-805 (D. Colo. Apr. 21, 2017) ("[T]he Tenth Circuit has taken a more expansive reading of *Touhy*.").

The Department of Justice (the "Department")—to which the USAO belongs—has promulgated *Touhy* regulations under the Housekeeping Act that "set forth procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department…in all federal and state proceedings in which the United States is not a party…when a subpoena, order, or other demand…of a court or other authority is issued for such material or information." *See* 28 C.F.R. § 16.21-22(a).[4] The procedures outlined in 28 C.F.R. §§

---

[3] 5 U.S.C. § 301 states that "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."

[4] 28 C.F.R. § 16.22 (a). In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material

16.21 *et. seq.* apply to anyone under the supervision, jurisdiction, or control of the Attorney General of the United States, including United States Attorneys and their subordinates and staff. *See* 28 C.F.R. § 16.21(b). The Department may produce materials (i) if the demanded disclosure is appropriate under § 16.26(a)[5] and (ii) none of the factors specified in § 16.26(b) exist. 28 C.F.R. § 16.24.

§ 16.26(b) prohibits disclosures that (1) violate a statute or a rule of procedure, (2) violate a specific regulation, or (3) reveal classified information that has not been appropriately declassified. § 16.26(b)-(c). If the administration of justice[6] requires, the Department may make disclosures that (1) reveals a confidential source or informant; (2) reveals investigatory records compiled for law enforcement purposes, interferes with enforcement proceedings, or discloses investigative techniques; and (3) improperly reveal trade secrets without the owner's consent. *Id.* Final agency decisions, like a federal agency's decision to release subpoenaed materials, are reviewable under the APA. *See Schroeder*, 673 F. Supp. 3d at 1213; *Houston Bus. J., Inc*. 86 F.3d at 1212 n.4; *Edwards v. U.S. DOJ*, 43 F.3d 312, 316-317 (7th Cir. 1994).

### III.    The Privacy Act

The Privacy Act "was enacted to protect the privacy of individuals identified in information systems maintained by Federal agencies by preventing the misuse of that

---

contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

[5] When deciding whether to make a disclosure, the Department should consider whether the disclosure is appropriate under the rules of procedure governing the case in which the demand arose and the relevant substantive law concerning privilege. 28 C.F.R. § 16.26(a).

[6] If the administration of justice requires disclosure—to pursue a civil or criminal prosecution—the Department shall consider (1) the seriousness of the violation of the crime involved, (2) the past history or criminal record of the violator or accused, (3) the importance of the relief sought, (4) the importance of the legal issues presented, and(5) and other matters brought to the attention of the Department. 28 C.F.R. § 16.26(c).

information." *Andrews v. Veterans Admin. of U.S.A.*, 838 F.2d 418, 421-22 (10th Cir. 1988). The Act "governs the government's collection and dissemination of information and maintenance of its records" and generally bars a federal agency from disclosing an individual's personal information without the written consent of that individual. *See Gowan v. U.S. Dep't of Air Force*, 148 F.3d 1182, 1187 (10th Cir. 1998); 5 U.S.C. § 552a; §522a(b). Information covered by the Privacy Act may be disclosed without an individual's consent "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).

Where litigation originates in federal court, and a party wishes to discover information protected by the Privacy Act, a federal district court may issue a § 552a(b)(11) order compelling the discovery held by the federal agency; in doing so, the trial court must consider the relevance standard under Federal Rule of Civil Procedure 26(b)(1), including a substantive balancing of interests like harm to an affected party. *Laxalt v. McClatchy*, 809 F.2d 885, 888-89 (D.C. Cir. 1987) ("Once again, we indicate that, absent an express congressional intent to the contrary, the standard set forth in the FCRP must be followed with respect to discovery requests in District Court. We, therefore, hold that a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP."); *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980) ("[A] court order is merely one of the "conditions of disclosure."); *Pippinger v. Rubin*, 129 F.3d 519, 532 (10th Cir. 1997).

Where the underlying litigation originates in state court, sovereign immunity bars a state court from enforcing a subpoena against the federal government. *See Santini v. Herman*, 456 F. Supp. 2d 69, 71-72 (D.D.C. Oct. 17, 2006); *Houston Bus. J. v. Off. of the Comptroller of Curr.*, 86 F.3d 1208, 1211 (D.C. Cir. 1996); *Boron Oil Co. v. Downie,* 873 F.2d 67, 71 (4th Cir. 1989)

("The assertion of state court authority to override the EPA's *Touhy* regulations clearly violates the Constitution's supremacy clause."); *In re Gray*, 162 F.3d 1127, *1 (10th Cir. 1998) (finding that a state criminal litigant cannot compel production from a federal agency through a state court subpoena and that the litigant could bring an action in federal court under the APA) (unpublished).

Similarly, many courts agree that a forum state court is not a "court of competent jurisdiction" capable of issuing a § 552a(b)11 order to disclose information by a federal agency protected by the Privacy Act. *See Longtin v. U.S. Dept. of Justice*, 2006 WL 2223999, at *3 (D.D.C. Aug. 3, 2006) (finding that state courts are not courts of competent jurisdiction as required by the Privacy Act's § 552a(b)(11) exception because the United States did not waive its sovereign immunity by enacting this exception to the Privacy Act); *Butowsky v. Folkenflik*, 2019 WL 12373861, at *8 (E.D. Tex. Dec. 13, 2019); *Bosaw v. Nat'l Treasury Empls. Union*, 887 F. Supp. 1199, 1211 (S. D. Ind. May 24, 1995) (finding that "sovereign immunity was implicated" by a state court order compelling personnel records from a federal agency when the agency refused to produce them under valid agency regulations); *Beckett v. Serpas*, 2013 WL 796067, at *4 (E.D. La. Mar. 4, 2013).

## DISCUSSION

Because the Plaintiffs voluntarily dismissed their claim under the Privacy Act, the only issue before this Court is whether, under the APA, the Department of Justice arbitrarily and capriciously failed to respond to the Plaintiffs' *Touhy* subpoena.[7] **Docs. 11 at 19** ("The basis for

---

[7] "The Plaintiffs contend that the *Touhy* Denial is arbitrary and capricious, short of statutory right, and unsupported and unwarranted by the facts, for, inter alia, the reasons given in the *Touhy* Letter itself and in this Amended Complaint. The Plaintiffs also contend that it was without observance of the procedures required by law, in that the United States failed to analyze the requests in the *Touhy* Subpoena under its own *Touhy* regulations or the procedural rules of the forum (Rules 1-026 and 1-045), provide specific feedback on the reasons for the denial and how to rectify them, or work with the Plaintiffs in good faith to make production or tee up the disputes quickly." **Doc. 11 at 20.**

the United States' *Touhy* Denial here is § 16.26(b)(1), *i.e.*, that "disclosure would violate a statute," namely the Privacy Act."**); 15.** The Plaintiffs argue that this Court should issue an order under the Privacy Act compelling the Department to produce the requested documents, including the personal information of Ayudando victims, financial information related to those victims' dealings with Ayudando, and investigative materials regarding Mr. Hildebrandt's work with Ayudando. **Docs. 11-3; 21 at 26.** Alternatively, the Plaintiffs request the Court to remand their "request to the Government to reevaluate it under its *Touhy* regulations and then produce all documentation to which it concludes the Plaintiffs are entitled, notwithstanding the Privacy Act." **Doc. 21 at 26-27**. The Plaintiffs assert that an APA action challenging the Government's denial of a *Touhy* request is a recognized vehicle for obtaining a § 552a(b)(11) order. **Doc. 25 at 4.**

In response, the Government argues that the Department acted by its *Touhy* regulations and did not act arbitrarily or capriciously when denying the Plaintiffs' *Touhy* request. **Doc. 24 at 25.** Second, the Government argues that there is no mechanism under the APA for this Court to provide the § 552a(b)(11) order the Plaintiffs seek. *Id.* **at 24.** Third, the Government further argues that even if the Court could issue a § 552a(b)(11) order, the Plaintiffs have (i) not shown that the information sought is relevant to the case and (ii) the Ayudando victims' privacy interests outweigh the Plaintiffs' litigation interests. *Id.* **at 30-31.** For the reasons below, the Court agrees.

> **I.    The Court cannot procedurally issue a § 552a(b)(11) order through an APA action, and the Department did not act arbitrarily and capriciously when denying the Plaintiffs' *Touhy* subpoena.**

The only issue before this Court is the Plaintiffs' request to review the Department's *Touhy* denial under the APA. ***See* doc. 15.** First, the Court is aware of the Plaintiffs' Notice of Supplemental Authority, notifying the Court of the Supreme Court's decision to overturn

*Chevron's* deference for agency actions[8] in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). ***See* doc. 28**; 144 S. Ct. 2244, 2257-2273; *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). While *Loper Bright* did overturn judicial deference to an agency's reasonable interpretation of an ambiguous statute, it did not overturn the APA's "mandate that judicial review of agency policymaking and factfinding be deferential." 144 S. Ct. at 2261 (citing 5 U.S.C. § 706(2)(A) and (E)). *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999)( "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."). Here, the Plaintiffs do not contest that the Department's interpretation of the Housekeeping Statute (5 U.S.C. § 301) or the Privacy Act (5 U.S.C. § 552a(b)) is ambiguous. ***See* docs. 21 at 23-26; 25 at 8 n. 4; 24.** Rather, the Plaintiffs argue that the Department's decision to decline to produce the subpoenaed materials was arbitrary and capricious. ***Id.*, doc. 11 at 20.** *Loper Bright*, therefore, has little bearing on this case. *See* 144 S. Ct. at 2261.

Under the APA, the federal district court has the power to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). Therefore, the review and relief available to a plaintiff under the APA is limited. *See Dine Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1029 (10th Cir. 2023) ("This means we will not overturn an agency's decision unless it is arbitrary, capricious…"). The Court reviews whether the Department's

---

[8] *Chevron* deference refers to a now overturned two-step framework to interpret statutes administered by federal agencies. Under the framework, the reviewing court must first determine whether Congress has spoken directly on the issue at hand; if Congressional intent is clear, then the court must rule in favor of the interpretation that is in line with that intent. If the statute is silent or ambiguous or silent with respect to the specific issue, however, the court must defer to the agency's interpretation if it is based on a permissible construction of the statute. *See Loper Bright*, 144 S. Ct. at 2254; *Chevron*, 467 U.S. at 842.

*Touhy* denial relied on factors that Congress did not intend it to consider, offered an explanation for its decision that runs counter to the evidence before the Department or failed to consider an important aspect of the problem in front of it. *See Wyoming*, 661 F.3d at 1127; *Dine Citizens*, 59 F.4th at 1029. The Court's review of the administrative record is narrow and deferential, and the relief available to the Plaintiffs under the statute is that the Court remands the decision back to the agency for further review and explanation. *See Wolfe*, 446 F.3d at 1100; *Wyoming*, 661 F.3d at 1227; *Copar Pumice Co.*, 603 F.3d at 793; *Kobach*, 772 F.3d at 1197; *Citizens for Alternatives to Radioactive Dumping,* 486 F. 3d at 1096*; Bar MK Ranches,* 994 F.2d at 740*; Orlando Ventura*, 537 U.S. at 17 (2002); *Lorion*, 470 U.S. at 744.

Plaintiffs argue that this Court can grant a court order under § 552a(b)(11) through the procedural mechanisms of an APA appeal of a *Touhy* denial. ***See* doc. 21 at 31**; *Louisiana*, 978 F.2d at 235 n.15 ("Section 552a(b)(11), however, would be applicable should Sparks institute a federal cause of action under the Administrative Procedure Act or the Freedom of Information Act."); *Bosaw v. National Treasury Empls. Union*, 887 F. Supp. 1199 (S. D. Ind. May 24, 1995). But granting this type of relief is outside the scope of the APA; if the Court finds that the Department did act arbitrarily and capriciously, the Court cannot substitute its judgment for the Department's. *See Lorion*, 470 U.S. at 744. Instead, the relief available to the Plaintiffs is a remand back to the Department for further consideration based on this Court's order. *See id.*; *Schroeder*, 673 F. Supp. 3d at 1224 (remanding a *Touhy* denial to the agency for reconsideration based on the district court's order).

Plaintiffs cite two cases to support their proposition that this Court can grant a court order under § 552a(b)(11) through this instant APA appeal of a *Touhy* denial. ***See* doc. 21 at 31**; *Louisiana*, 978 F.2d at 235 n.15 ("Section 552a(b)(11), however, would be applicable should

Sparks institute a federal cause of action under the Administrative Procedure Act or the Freedom of Information Act."); *Bosaw*, 887 F. Supp. 1199 (S. D. Ind. May 24, 1995) (concluding that it could not enforce a state court subpoena against the agency because of limited jurisdiction under 28 U.S.C. § 1422, but that it would be a "court of competent jurisdiction" capable of providing a §522a(b)(11) order if the litigant had commenced a direct action against the agency in federal court). Despite these indications that federal action against a non-party agency challenging its *Touhy* denial could result in a §522a(b)(11) order, the Court has not found any cases that actually grant a Privacy Act order due to an APA review of a *Touhy* order. **Doc. 21 at 31** (where the Plaintiffs concede that they have also not found a case that grants a § 552a(b)(11) order on an APA appeal of a *Touhy* denial).

Unlike this action—where the underlying litigation originates in state court—the Tenth Circuit caselaw cited by the Plaintiffs addresses how district courts should handle a request for a §522a(b)(11) Privacy Act order where cases have originated in federal court. *See Laxalt v. McClatchy*, 809 F.2d at 888-89; *Weahkee*, 621 F.2d at 1082; *Pippinger*, 129 F.3d at 532. This case implicates the federal government's sovereign immunity because the Department has not waived its sovereign immunity except under the APA, so neither a state court nor this Court could enforce the Plaintiffs' original subpoena.[9] ***See* AR 0033**; *Bosaw v*. 887 F. Supp. at 1211; *Longtin*, 2006 WL 2223999, at *3; *Downie,* 873 F.2d at 71; *Edwards*, 43 F.3d at 316-317; *Gilmore*, 694 F.3d at 1166, n.1; *Testan*, 424 U.S. at 399.

---

[9] Even in circuits that do hint at being able to force a federal agency to participate in state court discovery, the review still goes through the APA's arbitrary and capricious standard. *See, e.g.*, *St. Vincent*, 71 F.4th at 1075 ("In other words, without the APA, Ascension has no recourse against the Department. Thus, only when the Department's decision contravenes the APA's familiar arbitrary-and-capricious standard can a district court force it to take part in state court discovery.").

In the absence of any textual indication that this Court can issue an order to release the information held by the Department under § 522a(b)(11) through an APA review, the only relief available to the Plaintiffs is a judicial review of the Department's decision under an "arbitrary and capricious standard." *See* § 706(2)(A) ("The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious…")*; Schroeder*, 673 F.S Supp. 3d at 1213; *Houston Bus. J.*, 86 F.3d at 1212 n.4; *Edwards*, 43 F.3d at 316-17; *Downie*, 873 F.2d at 69-70 ("*Touhy* is part of an unbroken chain of authority that supports the Department's authority that a federal employee cannot be compelled to obey a subpoena, even a federal subpoena, that acts against valid agency regulations."); *In re Gray*, 162 F.3d 1127, *1; *Quezada v. Mink*, 2010 WL 4537086, at *5 (D. Colo. Nov. 3, 2010) (collecting cases) ("This line of authority makes clear that this Circuit has interpreted *Touhy* to allow federal officials to limit subordinates' authority. To produce documents or provide testimony pursuant to duly-enacted regulations…Although both efficiency and economy are compromised by the requirement of a separate claim brought pursuant to the Administrative Procedures Act, that is what the law of this Circuit requires."); *Aero Tech*, 2023 WL 5002618, at *7; *Am. W. Bank Members, L.C. v. Utah*, 2021 WL 5384840, at *5 (D. Utah Nov. 18, 2021) ("*Saunders* is binding on this court, and under *Saunders*, if [plaintiff] wishes to dispute the FDIC's *Touhy* disclosure decisions, it must do so in an APA proceeding."); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999) ("When the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas.").

In their complaint, the Plaintiffs claim that the Department's *Touhy* denial was "arbitrary and capricious," that the United States "failed to analyze the requests in the *Touhy* subpoena

under its own *Touhy* regulations or the procedural rules of the forum,"[10] and failed to provide specific feedback on the reasons for the denial and how to rectify them. **Doc. 11 at 20.** The Court examines the administrative record to determine whether the Department acted arbitrarily and capriciously in denying the Plaintiffs' *Touhy* denial. *See Citizens for Alternatives to Radioactive Dumping*, 485 F.3d at 1096. Absent extraordinary circumstances—like bad faith on the part of the agency, which is not present here—the Court's review is restricted to the administrative record lodged with the Court. *See id*. The administrative record consists of seven documents: the state court subpoena, docket, and scheduling order; the *Touhy* request letter sent to the Department with the subpoena; internal Department emails between April and June 2023 discussing the *Touhy* request; and the Department's *Touhy* Denial letter. ***See generally* AR 001-0048.**

  In their opening brief, the Plaintiffs do not argue that the primary basis for the denial—that the disclosure of records would violate the Privacy Act contrary to the Department's *Touhy* regulations—is arbitrary and capricious. **Docs. 11; 21 at 3** ("The Government here has not really made an error in refusing to produce, since it did not yet have a § 552a(b)(11) order), **9** ("The *Touhy* denial appears to have been based on legal research conducted by AUSA Sam Kelly on April 7, 2023, the accuracy of which by and large the Plaintiffs do not take issue with."), **28** (acknowledging that the Plaintiffs are requesting the Court to issue an APA order "against a

---

[10] The Court declines to address the Plaintiffs' arguments about the discovery rules of New Mexico state court, including rules NMRA 1-026 and 1-045, because the Court has already found that sovereign immunity concerns bar this Court and the state court from enforcing the state court subpoena. The Department's *Touhy* denial letter addresses these concerns, albeit briefly. *See* **AR 0033** ("The Department further noted that its Touhy regulations have the force of federal law and must be followed even in state court proceedings and that sovereign immunity bars direct enforcement by the state court of the subpoena against the Department or its employees…The Department need not address other discovery-based objections to the subpoena for this reason but nonetheless notes that the several of the requests as worded are facially overbroad, unduly burdensome, and vague.")

federal agency that has not really committed any error (because prior to the Court's issuance of the order, the Government in fact *couldn't* lawfully produce the documents)").

As the Plaintiffs admit, the Department's *Touhy* denial was neither made in error nor arbitrary and capricious, so this Court does not set aside its decision. ***See id.****; Orlando Ventura*, 537 U.S. at 177; *Wolfe*, 446 F.3d at 1100; *Lorion*, 470 U.S. at 744; *Schroeder*, 673 F. Supp. 3d at 1213; *Houston Bus. J., Inc.* 86 F.3d at 1212 n.4; *Edwards*, 43 F.3d at 316-317. The administrative record suggests that the Department carefully considered the arguments made in the Plaintiffs' *Touhy* request.[11] **AR 0024-25**; *Wolfe*, 446 F.3d at 1100; *Wyoming*, 661 F.3d at 1227; *Kobach*, 772 F.3d at 1197. Under its *Touhy* regulations, the Department is categorically barred from releasing information that would violate a statute—here, the Privacy Act. 28 C.F.R. § 16.26(b). The Department made a reasonable factual finding that all of the requested materials under the subpoena—names, contact information, and financial information of Ayudando clients, discovery and forensic accountant work product related to defendants in the criminal case against Ayudando managers, documents written by Mr. Hildebrandt, Department communications with Mr. Hildebrandt, payments made to Mr. Hildebrandt by Ayudando—include personal information protected by the Privacy Act, which the Department is prohibited from releasing without the consent of the "individual to whom the record pertains." ***See id.,*** **40-43**; 5 U.S.C. § 552a(b); *Kobach*, 772 F.3d at 1197. The Department then assessed whether any statutory exceptions within the Privacy Act would allow disclosure of the requested materials, namely the

---

[11] In her analysis of whether the Department could respond to the subpoena, AUSA Sam Kelly writes, "In his letter, Carter states that disclosure does not violate any statute other than perhaps HIPAA, and that any such disclosure in violation of that statute can be cured by a protective order. He does not mention that Privacy Act and it seems clear that we will violate its provisions if we provide a substantive response to the subpoena. I looked carefully for an out here—the Act just says, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless one of 12 statutory exceptions applies." **AR 0025.**

routine use, health and safety, and court order exceptions. **AR 0025**; 5 U.S.C. § 552a(b)(3),

(b)(8), (b)(11). Ultimately, the department concluded that the only possible exception was under

§ 552a(b), which allows disclosure upon the order of "a court of competent jurisdiction." *Id.*

> The Department reasonably declined to respond to the subpoena without such an order.

**AR 0031-33.** The administrative record reveals that (i) the Department conducted a thorough and

rational analysis of the *Touhy* request, (ii) the Department relied only on the factors that

Congress intended it to consider under both the Privacy Act and the Housekeeping Act, (iii) the

Department considered all important aspects of the *Touhy* request, (iv) and did not offer an

explanation that is counter to the evidence before it. *See Arizona Public Service Co.*, 562 F.3d at

1122-1123; *State Farm Mut.*, 463 U.S. at 43; *Olenhouse*, 42 F.3d at 1575. The Department also

articulated a satisfactory, if brief, explanation for its action that was rationally connected to the

record and its decision to deny the *Touhy* request. Id.; *Ctr. For Biol. Diversity*, 72 F.4th at 1178

(10th Cir. 2023); *Kobach*, 772 F.3d at 1197; **AR0033** ("Section 16.26(b)(1) prohibits the

Department's disclosure pursuant to a demand if doing so would "violate a statute." 28 C.F.R. §

16.24(b); *see* 5 U.S.C. § 552a(b) (The Privacy Act).").

> The Department clearly did not act arbitrarily and capriciously when refusing to produce

the requested materials because doing so would violate the Privacy Act in violation of its *Touhy*

regulations. *See Arizona Public Service*, 562 F.3d at 1122-1123; 5 U.S.C. § 706(2); *Olenhouse*,

42 F.3d at 1573-74; *Wolfe*, 446 F.3d at 1100; *Lorion*, 470 U.S. at 744. Because the Privacy Act

bars the production of all of the materials requested by the Plaintiffs, the Court declines to

address the Plaintiffs' other arguments about the department's non-Privacy Act objections: (i)

namely that the administration of justice allows the disclosure of investigatory records compiled

for law enforcement purposes under § 16.26(b)(5), and (ii) that the Plaintiffs' requests are

facially overbroad, unduly burdensome, and vague. **AR 0035-36.** *See COMSAT*, 190 F.3d at 278.

## II.      Even if the court could issue a § 552a(b)(11) order via an APA review of the Department's *Touhy* denial, the Plaintiffs have not demonstrated the relevance of the requested information.

As explained, this Court has no procedural mechanism to issue a § 522a(b)(11) under the

APA. *See* § 702(2)(A)*; Schroeder*, 673 F.S Supp. 3d at 1213; *Houston Bus. J.*, 86 F.3d at 1212

n.4; *Edwards*, 43 F.3d at 316-17; *Downie*, 873 F.2d at 69-70; *COMSAT Corp.*, 190 F.3d at 274.

Even if this Court could issue such an order, the Plaintiffs fail the test of discoverability under

Rules 26(b)(1), 45, and the Privacy Act.[12] *See Laxalt*, 809 F.2d at 888-890 ("Where the records

sought are subject to the Privacy Act, the District Court's supervisory responsibilities may in

many cases be weightier than in the usual discovery context" and finding that a district court

must consider the use of protective orders, in camera inspection, and notifying the affected

parties); *Weahkee*, 621 F.2d at 1082; *Pippinger*, 129 F.3d at 532; Fed. R. Civ. P. 26(b)(1), 45.

The Plaintiffs argue that the information requested is essential to the putative class of

Ayudando clients because (i) the class action complaint in state court is likely the only way that

the Ayudando victims will get back the full value of what was stolen from them, and (ii) the

statute of limitations of Mr. Hildebrandt's actions has already run. **Doc. 21 at 34-35.** The

Plaintiffs further argue that, under the APA, the Government is not allowed to raise new

___

[12] The Plaintiffs argue that this Court should apply the New Mexico Rules of Civil Procedure 1-026 and 1-045 when assessing whether the materials protected by the Privacy Act are discoverable. **See docs. 21 at 32-24; 25 at 10**; NMRA 1-026, 1-045. Rule 1-026 allows for a broader discovery of information than the federal Rule 26 (b)(1), specifically that parties may obtain any "information, not privileged which is relevant to the subject matter not involved in the pending action." NMRA 1-026. However, when federal district courts assess whether they should issue a 522a(b)(11) order for materials otherwise protected by the Privacy Act, they are instructed to apply the discovery rules discussed in the Federal Rules of Civil Procedure, which incorporate a narrower scope of discovery and incorporate the concept of proportionality. *See* Fed. R. Civ. P. 26(b)(1); *Laxalt*, 809 F.2d at 888-890; *Weahkee*, 621 F.2d at 1082; *Pippinger*, 129 F.3d at 532. Accordingly, the Court uses the scope of discovery under the Federal Rules of Civil Procedure. *See id.*

19

arguments about relevance and the privacy interests of the Ayudando victims that were not articulated in its *Touhy* denial, namely its arguments about the relevance of the information and the privacy interests of the Ayudando victims. ***See* doc. 25 at 8;** *Arizona Public Service Co.*, 562 F.3d at 1122-1123; *State Farm Mut.*, 463 U.S. at 43; *Olenhouse*, 42 F.3d at 1575. The Court agrees that because a Privacy Act court order is outside the scope of an APA review, the Government properly raises its relevance concerns for the first time in its arguments about the discoverability of the requested information. ***See id.*; doc. 24 at 31.**

The Plaintiffs are correct that, in a vacuum, the names, addresses, and financial information of the Ayudando victims are relevant to the underlying class action litigation in state court. **Doc. 21 at 31** (noting that this information is relevant to the class action lawsuit to send out class notices, calculate each member's damages, and litigate potentially individualized issues). Rule 26(b)(1) allows for the discovery of non-privileged information that is relevant to any party's claim and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the importance of discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

Here, the Department notified all Ayudando victims of the class action litigation and the contact information of the Plaintiffs' counsel, cutting against their relevance argument. **Doc. 24-A; Fed. R. Civ. P. 26(b)(1).** If the Ayudando victims wish to pursue their claims against Mr. Hildebrandt, they may do so by executing Privacy Act releases such that the Department may produce their information to the Plaintiffs. ***See* doc. 31 at 37;** 5 U.S.C. § 552a(b). In the absence of such releases, however, the Court balks at providing the sensitive personal information of hundreds of Ayudando victims—even where the individuals may be "incompetent or otherwise

20

unable to manage their own affairs"—to the Plaintiffs. **Doc. 25 at 11.** This is especially true when the potential class members have been notified of the litigation by the Department, meaning they can exercise their choice in joining the litigation and provide the necessary information to Plaintiffs' counsel. **See doc. 24-A;** Fed. R. Civ. P. 26(b)(1) (assessing the importance of the issues at stake, the importance of discovery to resolve the issue, and the parties' access to relevant information).

Further, the Government convincingly argues that releasing the Ayudando victims' information outweighs the likely benefit of producing the requested information. **Doc. 24 at 32-35**; Fed. R. Civ. P. 26(b)(1); *Laxalt*, 809 F.2d at 889-90. Applying the balancing of interests test discussed in *Laxalt* and Rule 26, the Court concludes that the large volume of sensitive information requested about these vulnerable individuals—potentially subjecting them to embarrassment, annoyance, and harm—would not be adequately protected by conventional protective orders and in-camera inspection. *See id*; **doc. 25 at 13-14.** The Ayudando victims have a strong privacy interest in protecting the information connected to the fraud and embezzlement they suffered at the hands of Ayudando guardians. *See Laxalt*, 809 F.2d at 889 ("[T]he applicability of the Privacy Act to the materials requested is a relevant factor for the District Court to consider in determining the appropriate scope and manner of discovery in a given case."); *Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("[D]istrict court should not neglect their power to restrict discovery where justice requires protection for a party or person from annoyance, embarrassment, oppression, or undue burden or expense.") (internal quotations and citations omitted).

When assessing the privacy interests of the Ayudando victims, the Court notes that the Privacy Act reflects "a strong privacy interest in the nondisclosure of complied computerized

information." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). Unlike in other cases,[13] the records in question were compiled to pursue a criminal conviction against the managers of Ayudando Guardians. *See* **doc. 24 at 34**; 18 U.S.C. § 3771. To share private personal and financial information that was collected for a purpose so unrelated to the underlying class action would constitute a betrayal of trust that the Ayudando victims placed in the hands of the Department. *See Kyle*, 2021 WL 1407960, at * 5-6.

Ultimately, the Ayudando victims and their representatives are in the best position to decide whether they should provide their sensitive personal and financial information to the Plaintiffs, especially given the past fraud they suffered at the hands of Ayudando Guardians. *See United States v. Ayudando Alpha, Inc.*, 17-cr-1836-MV (D.N.M.); *Martinez v. Soc. Sec. Admin.*, 2007 WL 4573749, at *5 ('[A]s noted in assessing the privacy interest, any speculative benefit can be obtained without instructing on claimants' privacy simply by having class members obtain and supply information about their claims to the Plaintiffs or class counsel). The Department has also allowed them to do so through their victim notification. ***See* doc. 24-A.**

**CONCLUSION**

For the reasons above, the Court **AFFIRMS** the Department of Justice's decision to deny the Plaintiffs' *Touhy* Request (**Doc. 21**). The Court also **DENIES as MOOT** the Plaintiff's Unopposed, Expedited, Renewed Motion to Expedite Final Decision (**Doc. 27**) and **GRANTS** the Plaintiffs' Unopposed Motion to Accept Brief as Timely Filed (**Doc. 26**).

---

[13] For example, in *Kyle v. Fed. Trade Comm.*, the court found that the disclosure of four million phone numbers from the Do Not Call Registry did not implicate the Privacy Act because the purpose of the registry was to share these phone numbers with telemarketers, in part to "provide notice that certain telemarketing calls to the listed numbers are unlawful." But the Court restricted the discovery of additional contact information like names, addresses, and emails to provide class notice in the underlying litigation. The Court concluded that "such unsolicited contact would betray the confidence the individuals put in the FTC when providing this additional personal information and is contrary to the privacy goals of the TCPA. As a result, the Court finds that the risk of annoyance or oppression caused by the disclosure of additional contact information precludes its discovery." 2021 WL 1407960, at * 5-6 (W.D. Mo. Apr. 14, 2021)

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE